UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN THOMAS, on Behalf of Himself and on Behalf of All Others Similarly Situated, | ) ) ) | |
| | ) | Civil Action No. 1:22-cv-10793-DPW |
| Plaintiff, | ) ) | |
| | ) | Judge Patti B. Saris |
| vs. | ) ) | |
| OS RESTAURANT SERVICES, LLC and OS PRIME, LLC, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

CONSENT MOTION FOR APPROVAL OF
FAIR LABOR STANDARDS ACT COLLECTIVE ACTION SETTLEMENT

Representative Plaintiff, John Thomas, on behalf of himself and all Opt-In Plaintiffs (Representative Plaintiff and Opt-In Plaintiffs together referred to as "Plaintiffs"), hereby file this Motion for Approval of Fair Labor Standards Act Collective Action Settlement. Defendants, OS Restaurant Services, LLC and OS Prime, LLC ("Defendants"), consent to the forgoing Motion.

I.      INTRODUCTION

The Parties seek approval of the proposed FLSA Settlement reached between them and memorialized in the Release and Settlement Agreement ("Settlement" or "Agreement") attached as Exhibit A. The proposed Settlement will resolve bona fide disputes involving alleged minimum wage violations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219. Because the proposed Settlement is an FLSA settlement, as opposed to a Rule 23 *opt-out* settlement, and because the existing Opt-In Plaintiffs already consented to have Representative Plaintiff represent their interests and to be bound by any settlement and/or judgment in this case, no fairness hearing is required or requested by the Parties.[1] The Parties agree that the proposed Settlement is fair and

---

[1] *See Lauture v. A.C. Moore Arts & Crafts, Inc*., No. 17-cv-10219, 2017 WL 6460244, *1 (D.

reasonable and satisfies the criteria for approval under § 216(b) of the FLSA. The Settlement was achieved during arms-length negotiations among the Parties, conducted by experienced counsel and an experienced mediator. If approved by the Court, the Settlement will provide for the issuance of settlement payments to Plaintiffs within forty-four (44) days. The following sections explain the nature of the lawsuit, the negotiations, the Settlement's principal terms, and the propriety of approving the Settlement.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    <u>The Lawsuit</u>

On May 24, 2022, Representative Plaintiff filed this lawsuit alleging that Defendants did not pay their non-exempt tipped employees (i.e., servers and bartenders) the applicable minimum wage for all of the hours worked in violation of the FLSA, 29 U.S.C. §§ 201 to 219, and the Massachusetts Minimum Fair Wages Law ("MFWL"), M.G.L. c. 151 §§ 1, 7,.[2] The crux of Plaintiff's claims are that Defendants paid its tipped employees below the minimum wage rate by taking advantage of the tip-credit provisions of the FLSA and, in Massachusetts, the MFWL, by

---

Mass. June 8, 2017) (stating that "[a] one-step approval process is appropriate in FLSA settlements that do not include proposed Federal Rule of Civil Procedure 23 class releases", noting that "[u]nlike Federal Rules of Civil Procedure Rule 23 class actions, FLSA collective actions require similarly situated employees to affirmatively opt-in [in order to] be bound by any judgment" , and [b]ecause individuals who do not opt in to an FLSA lawsuit may bring their own separate suits, FLSA collective actions do not implicate the same due process concerns as do Rule 23 actions.") (citations omitted); *Batista v. Tremont Enterprises*, No. 1:19CV361, 2019 WL 3306315, *1, n. 1 (N.D. Ohio July 22, 2019) ("The parties do not request a fairness hearing. Nor is the Court required to hold one."); *Moore v. Ackerman Inv. Co*., C 07-3058, 2009 WL 2848858 (N.D. Iowa Sept. 1, 2009) ("Section 216(b) does not expressly require a 'fairness' hearing on a proposed settlement, as Rule 23 of the Federal Rules of Civil Procedure does for class actions pursuant to that rule, and Rule 23 requirements are not directly applicable to a collective action pursuant to § 216(b)."); *McLean v. HSM Elec. Prot. Services, Inc.*, 607CV1680ORL28, 2008 WL 4642270 (M.D. Fla. Oct. 8, 2008) (same); *Barnes v. Benzerenterprises, Inc.*, 607CV1754-ORL-22DAB, 2008 WL 4059839, (M.D. Fla. Aug. 27, 2008) ("the Court determines that there is no need for a fairness hearing").
[2] On August 24, 2023, Plaintiff filed an Amended Complaint as Defendant OS Prime, LLC was incorrectly named as "Fleming's/Boston, LP" in the original Complaint. (Dkt. 12.)

allegedly requiring their tipped employees to perform excessive amounts of non-tipped work that was allegedly unrelated to their tip-producing duties each workweek (dual job violation); and requiring them to perform non-tip producing side work in excess of 20% of the time spent working in the week (80/20 rule) and/or in excess of 30 minutes for continuous periods of time (30-minute rule). Representative Plaintiff claims that, as a result of Defendants alleged violations of the tip-credit provisions, Defendants must compensate him and similarly situated tipped employees for the difference between the wages actually paid to them and the minimum wage rate.

Defendants deny the allegations in this lawsuit and all liability and damages of any kind to anyone with respect to the alleged facts and causes of action asserted in the lawsuit. Defendant contends that that the Representative Plaintiff and all other tipped workers were correctly paid in compliance with the law.

After this lawsuit was filed, the Parties negotiated and reached a Stipulation for Conditional Certification and Notice to Class Members. On August 13, 2022, Plaintiff filed an Assented to Motion for Conditional Certification Under the Fair Labor Standards Act, along with the Parties Stipulation and an agreed upon Notice for this Court's approval. (Dkt. 13.) On October 25, 2022, the Court entered an Order granting Plaintiff's Assented to Motion for Conditional Certification and authorized notice to a class defined as:

> All current and former bartenders and servers who worked at Fleming's Steakhouse for at least one week during the three-year period prior to the filing of this action to the present.

(Dkt. Nos. 13-1, 24).

Thereafter, notice was issued to the approximately 2,019 current and former employees who fell within the scope of the conditionally certified class. The notice period closed on February 21, 2023. There are approximately 327 Opt-In Plaintiffs, each of whom filed a consent to join this

lawsuit, which states: "I agree to be represented by Counsel for the named Plaintiff" and "I authorize the named Plaintiff and Plaintiff's Counsel to file and prosecute the above referenced matter in my name, and on my behalf, and designate the named Plaintiff to make decisions on my behalf concerning the litigation, including negotiating a resolution of my claims and entering into a fee agreement with Plaintiff's Counsel, and I understand I will be bound be such decisions." The Opt-In Plaintiffs are listed in Exhibit A-1 (Exhibit 1 to the Settlement Agreement).

    **B.**    **<u>Negotiation of the Settlement</u>**

Prior to negotiating the Settlement, the Parties engaged in substantial investigation and informal discovery.

Prior to filing the Lawsuit, Plaintiffs' Counsel performed a significant amount of research and factual investigation of the claims to set forth a factually specific and accurate Complaint for the Court and Defendants.

After the notice period ended, Defendants produced time and pay records for the Plaintiffs, as well as point of sale data. Plaintiffs provided these records to their expert, Liesl Fox, Ph.D. Using these records, Dr. Fox identified the periods of time spent by the Plaintiffs working for Defendants without active customers while being paid below the minimum wage. The point-of-sale data shows the opening and closing time of each customer transaction. The time clock data shows when each tipped worker clocked in and clocked out each shift. Dr. Fox reviewed the transaction open times and the transaction close times for each shift when a Plaintiff worked for Defendants and compared that data to each Plaintiff's clock-in times and clock-out times for the shift. She identified all non-tipped periods of time that occurred during the shift: between the shift clock-in time and the first check open time, between the last check close time and the shift clock-out time, and intervals of inactivity between a check close time and the next check open time. In

other words, she identified each period when there were not active customer transactions for periods of time greater than 30 minutes and she identified the weeks when the total period of time without active customer transactions exceeded 20 percent of the total number of hours worked in a week. She then calculated the damages for the periods of time from December 2021 to the present using the methodology described in 29 C.F.R. § 531.56, which allows for a 20% credit and a 30-minute credit (meaning damages are owed for the periods of time in excess of 20% and in excess of 30 minutes). For the period prior to December 2021, Dr. Fox performed the same calculation without the applying the credit.

Plaintiffs provided Dr. Fox's analysis to Defendants and the Parties then engaged in extensive settlement talks. The Parties discussed the strengths and weaknesses of Plaintiffs' claims, Defendant's defenses, including Defendant's assertions that the data described above did not capture all time spent serving customers, and the damages that could be available should Plaintiffs prevail.

On July 20, 2023, the Parties attended mediation with Eric Galton, a mediator with extensive experience handling unpaid wage claims under the FLSA. With the assistance of Mr. Galton, the Parties reached a settlement after Mr. Galton made a mediator's proposal. The final terms of the settlement are reflected in their Agreement attached as Exhibit A.

### C.    <u>The Settlement Terms</u>

If approved, the Settlement will cover Representative Plaintiff and each of the Opt-In Plaintiffs. The Gross Settlement Amount is $215,000, which sum will cover: (a) the Net Settlement Fund (i.e., individual payments to Representative Plaintiff and the Opt-In Plaintiffs for their wage damages); (b) Plaintiffs' Counsel's attorneys' fees and expenses; (c) service payment to the Representative Plaintiff; and (d) the settlement administration costs. (Ex. A at Section I).

The "Net Settlement Fund" will be divided into individual payments to each of the Plaintiffs for alleged wage damages. The Net Settlement Fund will be allocated amongst Representative Plaintiff and the Opt-In Plaintiffs proportionately based upon the number of weeks worked each within the applicable limitations period. (*Id.* at Section I.C.) Any Opt-In Plaintiff who is owed less than $50.00 will receive a minimum payment of $50.00. (*See* Ex. A-2) The Parties agree that if the Court approves the Settlement, the Net Settlement Fund shall be allocated amongst the Plaintiffs as set forth in Exhibit A-1. In exchange for forgoing, Plaintiffs agree to release Defendants (including all current or former parent companies, subsidiary companies, and/or related, affiliated, or predecessor companies, partnerships, and/or joint ventures of Defendants) from all wage and hour claims under federal, state, or local law. (Ex. A at Section II.B.) Thus, the release of claims for all Opt-In Plaintiffs is a limited release of wage and hour claims only and not a general release of all employment related claims. Additionally, there is no reversion to Defendants and all Plaintiffs will be eligible to receive a direct payment from Defendants without the requirement to complete a claim form.

$7,500.00 of the gross settlement amount will be paid to Representative John Thomas as service payments for his services as Representative Plaintiff in this case against his former employer and in exchange for a general release. (*Id.* at Section I.G.)

$71,666.67 (one-third) of the gross settlement amount will be paid to Plaintiffs' Counsel for attorney's fees and $21,184.58 for litigation costs incurred in this matter. (*Id.* at Section 1.F.)

Additionally, $7,000 of the gross settlement amount will be paid to the Settlement Administrator (ILYM, Group, Inc.), for the cost of settlement administration.

## III.    THE PROPRIETY OF APPROVAL

### A.    <u>**Standard for Approval**</u>

The proposed Settlement is subject to approval pursuant to § 216(b) of the FLSA. "Compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910). In FLSA cases, as agreed-upon settlement should be approved if it represents a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Singleton v. AT&T Mobility Services, LLC*, 146 F.Supp.3d 258, 260 (D. Mass. 2015) (quoting *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin*., Wage & Hour Div., 679 F.2d 1350, 1355 (11th Cir.1982); *see also Jones v. Nuclear Pharm., Inc*., 741 F.2d 322, 324 (10th Cir. 1984) ("In exercising its discretion, the trial court must approve a settlement if it is fair, reasonable and adequate.") If the settlement of an employee's FLSA suit reflects a "reasonable compromise over issues," such as FLSA coverage, computation of back wages owed, or hoursworked that are "actually in dispute," the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores, Inc.*, 679 F.2d at 1354. As shown herein, approval of the settlement is warranted on all scores.

### B.    The Proposed Settlement is a Fair and Reasonable Resolution of a Bona Fide Dispute.

The Settlement is beneficial to the Plaintiffs in light of the complexities of the case, the disputed factual and legal issues, the recovery obtained, and the risks avoided. Indeed, the Parties vigorously dispute whether Plaintiffs are entitled to any relief for minimum wages, or whether Defendants properly used the tip-credit. The parties dispute whether Plaintiffs performed any work unrelated to their tipped occupation, and extensive factual dispute exists as to the amount of time Plaintiffs' allegedly spent performing non-tipped work, and whether such time exceeded the "20 percent" or "continuous period of time in excess of 30 minute" threshold necessary to trigger liability. Defendants maintain that Plaintiffs spent little time, if any, performing non-tipped work. Moreover, Defendant vigorously disputes Plaintiffs' damage model and asserts that this case

7

cannot be maintained as a collective action. Given the bona fide disputes between the Parties and the relief that will be obtained through the Settlement, the Settlement certainly represents a fair reasonable resolution of this lawsuit and eliminates the legitimate risk that the Plaintiffs might otherwise recover nothing.

### 1.    *Bona Fide Disputes Exist Concerning the Merits of Plaintiffs' Claims.*

A proposed settlement agreement resolves a bona fide dispute if it "reflects a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute" and is not a "mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's Food Stores*, 679 F.2d at 1354. In evaluating a settlement, "[t]here is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact. It is clear that the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation." Alba Conte & Herbert Newberg, Newberg on Class Actions §11.45 (4th ed. 2002). "In a case where an employee, represented by counsel, brings suit under the FLSA, the proposed settlement is 'more likely to reflect a reasonable compromise of disputed issues ... such as FLSA coverage or computation of back wages'—issues 'that are actually in dispute'—rather than a 'waiver of statutory rights brought about by an employer's overreaching.'" *Bradford v. Naples Causeway Development, LLC*, No. 2:21-cv-15, 2022 WL 3154760, *2 (D. Me. Aug. 8, 2022) (quoting *Lynn's Food Stores*, 679 F.2d at 1354).

Here, it is clear that that disputed questions of fact and law exist that could significantly impact this case if it were further litigated. There are several issues in dispute between the Parties, the outcome of which remains uncertain. First, the Parties dispute whether Plaintiffs are entitled to any relief at all. The Parties dispute whether Plaintiffs performed work that was unrelated to/"did

not directly support" their tipped occupation, as is necessary to constitute a "dual job" violation. *See* 29 CFR 531.56 (e), (f). The Parties also dispute whether Plaintiffs performed non-tipped work for a "substantial amount of time" (i.e., in excess of 20% of the time spent working during the week (80/20 rule) and/or for any continuous period of time in excess of 30 minutes (30-minute rule)).[3] While Plaintiff claimed that Defendants required tipped employees to perform non-tipped work more than 20% of the time and/or for continuous periods of time exceeding 30 minutes, Defendants countered that tipped workers spent little time, if any, performing non-tipped work. Second, the Parties disputed whether this case can be maintained as a collective action. Thus, without this Settlement, the Opt-In Plaintiffs may recover nothing. Third, while Defendant contended that Plaintiffs could not succeed on the merits, even if they could, the Parties also dispute whether Defendants' conduct was willful and whether Defendant would prevail on a good faith defense. After discovery, Defendant could have prevailed on summary judgment with respect to some or all of the claims. Accordingly, the Settlement certainly resolves a bona fide dispute.

### 2.    *The Proposed Settlement is Fair and Reasonable*

"When determining whether a proposed settlement is fair and reasonable, courts consider the "totality of the circumstances," which may include such factors as:

> (1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion.

---

[3] Under the FLSA, an employer can take a tip credit for the time a tipped employee spends performing work that is not tip-producing provided that the employee does not perform that work for a "substantial amount of time", which, as recently defined in the December 31, 2021 amendment to the FLSA, means: (1) "exceeds a 20 percent workweek tolerance, which is calculated by determining 20 percent of the hours in the workweek for which the employer has taken a tip credit" (80/20 rule); or (2) "any continuous period of time, the directly supporting work exceeds 30 minutes" (30-minute rule). *See* 29 CFR 531.56(f)(4).

*Singleton v. AT&T Mobility Services, LLC*, 146 F.Supp.3d 258, 260-261 (D. Mass. 2015) (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335–36 (S.D.N.Y. 2012)). "There is a 'strong presumption in favor of finding a settlement fair,' as the court's role is more a 'balancing of likelihoods rather than an actual determination of the facts and law in passing upon the proposed settlement.'" *Starr v. Credible Behavioral Health, Inc.*, CV 20-2986, 2021 WL 2141542, *4 (D. Md. May 26, 2021). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores, Inc.*, 679 F.2d at 1353-54. Here, all of the relevant factors demonstrate that the settlement of this adversarial matter is certainly fair and reasonable.

First, the range of possible recovery certainly favors approval, as the settlement provides for substantial relief—a recovery that is *greater* than what Plaintiffs' would be owed for unpaid wages based on Plaintiffs' damages calculations—and allows them to avoid the significant risk of potentially recovering nothing. Under the FLSA, the statute of limitations for bringing a wage claim is two years, but may be extended to three years if the Plaintiffs prove willfulness. Here, based on the damages calculation, Plaintiffs' estimated unpaid wages are approximately $127,611.86 on the two-year limitations period. Therefore, the settlement provides for a recovery that is approximately ***169% of the total amount owed for unpaid wages on the two-year limitations period***. ***After*** deductions for attorney's fees and costs, the service payment to the Representative Plaintiff, and the costs of settlement administration, Plaintiffs are recovering approximately 84% of the total amount owed for unpaid wages on the two-year limitations period. In fact, even if Plaintiffs prevailed, not only on the merits of their claims, but also on proving willfulness as is necessary to trigger the three-year statute of limitations, the total settlement amount would still represent more than 100% of the total amount owed for unpaid wages that would be owed, and

after all deductions, the net recovery for Plaintiffs would be more than half of the total amount allegedly owed for unpaid wages on the *three-year* limitations period. Meanwhile, at the other end of the spectrum, and under Defendant's theory, Plaintiffs would recover nothing. Indeed, counsel for both sides believe in the merits of their clients' positions, and there is certainly no guarantee that Plaintiffs would have succeeded on the merits of their claims. The settlement, on the other hand, guarantees Plaintiffs a substantial percentage of the Plaintiffs' estimated alleged damages.

Turning to the second factor, the claims involved in this case are small, and to further litigate them, with no guarantee of success, would be extremely costly, time consuming, and burdensome. Employment cases in general, and wage-and-hour collective actions in particular, are expensive and time-consuming. Moreover, as discussed above, several factual and legal issues are in dispute, the outcome of which remains uncertain. If forced to litigate this case further, the Parties would certainly engage in complex, costly and protracted wrangling, and in all probability, it would be years before it was resolved. Many years and significant costs would be required for the Parties to litigate the claims, complete discovery, brief final certification motions, brief summary judgment motions, and participate in pretrial proceedings. The decision on summary judgment and/or final certification could be appealed to the First Circuit (and possibly beyond), which could take years to complete. Assuming the Parties went to trial and verdict, there is a possibility that the verdict could be reversed. The ultimate resolution of this action on the merits via trial and appeal is indefinite at best. The settlement, on the other hand, provides for substantial guaranteed relief now, and thus amplifies the benefits of that relief through the economies of FLSA settlements. Thus, the second factor also favors approval.

Third, the litigation risks in this case are serious and substantial. Indeed, if the Court decertified the collective action, then Opt-In Plaintiffs would be entitled to no recovery. Moreover,

even if Plaintiffs successfully prove that they performed non-tipped work, they may still recover nothing, *i.e.*, if the Court finds that such non-tipped work supported their tipped occupations and did not exceed the "20 percent" or "continuous period of time in excess of 30 minute" threshold. Further, if the Court of jury found that Defendants' violations were not willful, then Plaintiffs recovery will be limited to the two-year statute of limitations period and several Plaintiffs (who did not work for Defendants within the two-year period) would receive nothing. All of these scenarios—which could result in either no recovery or a monetary award of less than the amount obtained through this settlement—would be possible but-for the Settlement. Continued litigation would only serve to increase the attorneys' fees and expenses in this matter, without any certainty that the Plaintiffs would obtain a higher verdict, or any verdict in their favor. Thus, the third factor also weighs heavily in favor of approval.

Additionally, the settlement is the product of arms-length negotiations by experienced counsel and there was certainly no fraud or collusion. The proposed settlement arises in an adversarial context, with pending litigation. The Parties were represented by counsel with extensive experience in litigating wage and hour claims on both an individual and collective basis, and counsel vigorously represented their clients' rights. Prior to negotiating the settlement, the Parties engaged in extensive investigation and exchanged substantial information including a complete analysis of Plaintiffs' damages. All aspects of this case were well-understood by both sides. Moreover, the Parties reached the settlement after negotiations under the close supervision of an experienced class action mediator, which assures that the negotiations were conducted at arm's length and without collusion between the parties. *See Hainey v. Parrot,* 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007) ("the participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and

without collusion between the parties."); *Martens v. Smith Barney*, 181 F.R.D. 243, 262-63 (S.D.N.Y. 1998) ("the third party mediation process was an appropriate measure for arm's length negotiations"); *see also Mongue v. Wheatleigh Corp.*, No. 3:18-cv-30095-KAR, 2023 WL 5435918, *7 (D. Mass. Aug. 23, 2023). At mediation (and in pre-mediation settlement discussions), the Parties and their counsel considered their competing evidence (including documents produced, data production, and data analyses) and legal arguments (including liability standards, defenses, and damages computation methodologies), and exchanged and presented competing potential damages calculations. With the assistance of a skilled mediator, the Parties reached the settlement. In light of these facts, it is clear that the settlement is the product of arms-length negotiation and there is no evidence of any fraud or collusion behind the settlement. Thus, the fourth and fifth factors also favor approval.

Simply put, the proposed Settlement is certainly a fair and reasonable resolution of a bona fide dispute between the Parties. Accordingly, the proposed Settlement should be approved.

## C.  <u>The Attorneys' Fees are Proper and Reasonable.</u>

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). The First Circuit recognizes two methods for calculating attorneys' fees the context of class and collective actions, the loadstar method, and the percentage of the fund (POF) method, "under which class counsel is awarded a fee equal to a 'reasonable percentage of the fund recovered for those benefitted by the litigation.'" *Noll v. Flowers Foods Inc*., Nos. 1:15-cv-00493, 410, 411, 2022 WL 1438606, *8, (D. Me. May 3, 2022). "[U]se of the POF method in common fund cases is the prevailing praxis", and "is usually 'less burdensome to administer,' and avoids the need for the court to 'review the time records of a multitude of attorneys in order to

determine the necessity and reasonableness of every hour expended....'" *Roberts v. TJX Companies, Inc*., 2016 WL 8677312, \*9 (D. Mass. Sept. 30, 2016). (quoting *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295 (1st Cir. 1995). Moreover, the percentage method "aligns the interests of class counsel and class members because it ties the attorneys' award to the overall result achieved rather than the hours expended by the attorneys." *Starr v. Credible Behavioral Health, Inc.*, CV 20-2986 PJM, 2021 WL 2141542, at \*1 (D. Md. May 26, 2021); *see also Rawlings v. Prudential Properties, Inc*., 9 F.3d 513, 516 (6th Cir. 1993) (the district court "must make sure that [class] counsel is fairly compensated for the amount of work done as well as for the results achieved" and "the percentage of the fund method more accurately reflects the results achieved").

In the case at bar, the Settlement provides for payment to Plaintiffs' Counsel for attorneys' fees in an amount equal to one-third of the Gross Settlement ($71,666.67), which is certainly reasonable.

In similar wage and hour class and collective actions, Courts in this Circuit and elsewhere routinely approve of attorney's fees awards to plaintiffs' counsel in an amount equal to *one-third **or more*** of the total settlement amount. *See, e.g., Woolfson v. Caregroup, Inc*., No. 1:09–cv–11464, 2010 WL 10063268, \*3 (D. Mass. Sept. 13, 2020) (approving award of attorneys' fees to Plaintiffs' counsel in an amount equal to 33% of total settlement amount wage and hour class action); *Roberts v. TJX Companies, Inc*., 2016 WL 8677312 (D. Mass. Sept. 30, 2016) (awarding 33% of total settlement amount to Plaintiffs' counsel for attorneys' fees in wage and hour action); *Curtis v. Scholarship Storage Inc*., No. 2:14-cv-303-NT, 2016 WL 3072247, \*4 (D. Maine May 31, 2016) (awarding plaintiffs' counsel one-third of the total $450,000 settlement amount (or $150,000) for attorneys' fees plus costs, and stating that "a one-third contingent fee is common in wage-and-

hour cases."); *O'Connor v. Oakhurst*, 2:14-00192-NT, 2018 WL 3041388 (D. Me. June 19, 2018) (approving as reasonable an award of attorney's fees of one-third of common fund, or $1.67 million in fees, plus $50,000 in expenses, in state law unpaid wages class action); *Sylvester v. Cigna Corp.*, 401 F. Supp. 2d 147 (D. Me. 2005) (awarding Plaintiffs' counsel 33% of $2.3 million recovery); *Starr v. Credible Behavioral Health, Inc.,* No. CV 20-2986 PJM, 2021 WL 2141542, at *5 (D. Md. May 26, 2021) ("A request for one-third of a settlement fund is common in this circuit and generally considered reasonable."); *Brandenburg v. Cousin Vinny's Pizza, LLC,* No. 3:16-cv-516, 2019 WL 6310376, at *5 (S.D. Ohio Nov. 25, 2019) (one-third of the total settlement "is a normal fee amount in a wage and hour case."); *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09CV1608, 2010 WL 2490989, *8 (N.D. Ohio, June 15, 2010) ("The amount of the contingency, one-third of the total award, is also reasonable and has been approved in similar FLSA collective actions in this judicial district."); *Lupian v. Joseph Cory Holdings*, No. 16-CV-5172, 2019 WL 3283044, *6 (D. N.J. July 22, 2019) (approving Plaintiff's counsel's request for "approximately one third of the settlement amount" for attorneys' fees in wage and hour class action that settled for $2,675,000, and stating: "that fee is based on a one-third percentage of recovery and is consistent with counsel's contingency arrangement with the named plaintiffs. Such percentage awards are consistent with fees in this District in contingency cases."); *Hunter v. CC Gaming, LLC*, No. 19-cv-01979, 2020 WL 13444208 (D. Colo. Dec. 16, 2020) ("where the Proposed Settlement creates a common fund, attorneys' fees of one-third or thereabouts are generally deemed reasonable."); *D'Amore v. Caesars Enterprise Services, LLC*, No. 2:18-CV-1990 JCM (VCF), 2020 WL 8613858, *4 (D. Nev. Oct. 28, 2020) (awarding Plaintiffs' counsel 34% of total settlement amount for attorneys' fees and costs.); *Sanders v. MPRI, Inc.*, No. 5:08–cv–00345–R (W.D. Okla. July 9, 2009) (approving fees in an FLSA collective

action of 38.5% of the total settlement plus litigation costs); *In re Public Service Co. of New Mexico*, No. 91–0536M, 1992 WL 278452 (S.D.Cal.1992) (approving a fee award of 33.4% on a $33 million recovery); *McNeely v. Natl'l Mobile Health Care, LLC*, No. CIV–07–933–M, 2008 WL 4816510, *15 (W.D. Okla. Oct.27, 2008) (approving fees equal to 33% of total settlement); *Mulroy v. National Water Main Cleaning Co*., No. 12–3669, 2014 WL 7051778, *6-*7 (D. N.J. Dec. 12, 2014) (awarding 40% of the total settlement amount to Plaintiff's Counsel for attorneys' fees and expenses, and stating only a brief review of the *Gunter* factors is required to confirm that the attorneys' fee sought is reasonable."); *Brumley v. Camin Cargo Control, Inc*., 2012 WL 1019337, *12 (D. N.J. March 26, 2012) (approving Plaintiff's Counsel's request for award of one third of total settlement fund for attorneys plus costs, stating: "one-third of the settlement fund falls within the range of reasonable allocations in the context of awards granted in other, similar cases."); *Henry v. Little Mint, Inc*., No. 12 Civ. 3996, 2014 WL 2199427, *15 (S.D.N.Y. May 23, 2014) (courts have routinely "awarded one-third or more of the settlement fund as attorneys' fees in wage and hour settlements"); *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 Civ. 4216, 2014 WL 3778173, *9 (S.D.N.Y. July 31, 2014) (awarding one-third of the total settlement fund for attorneys' fees and noting that it is "reasonable" and "consistent with norms of class litigation in this circuit").

The attorneys' fees Plaintiffs' Counsel seeks are reasonable in light of the substantial benefit achieved for the Plaintiffs. Indeed, the claims in this minimum wage case are small, and but-for this settlement, there is a legitimate risk that the Plaintiffs may recover nothing. Nonetheless, as discussed above, Plaintiffs' Counsel acquired a fair and reasonable settlement that provides for a substantial percentage of the Plaintiffs' estimated alleged damages given the facts and the relative merits and risks related to the Plaintiffs' claims and Defendant's possible defenses.

In any event, "Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees here 'encourage[s] the vindication of congressionally identified policies and rights.'" *Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994); *see also Jackson v. Estelle's Place, LLC*, 391 Fed.Appx. 239, 246 (4th Cir. 2010) ("The size of the damage award carries even less weight here given that the case arose under the fee-shifting provision of the FLSA."). In fact, while Plaintiffs' recovery far exceeds the requested attorneys' fees in this case, "[g]iven the nature of claims under the FLSA, it is not uncommon that attorneys fee requests will exceed the amount of the judgment in the case." *Heder v. City of Two Rivers,* 255 F.Supp.2d 947, 955–56 (E.D. Wisc. 2003) (quoting *Holyfield v. F.P. Quinn & Co.,* No. Civ. A. 90-C-507, 1991 WL 65928, *1 (N.D.Ill. Apr.22, 1991))*; see also Torres v. Gristede's Operating Corp.*, 519 F. App'x 1, 6 (2d Cir. 2013) ("Attorneys' fees may be awarded even where those fees amount to a substantial percentage of the overall award, since "the whole purpose of fee-shifting statutes is to generate attorneys' fees that are disproportionate to the plaintiff's recovery."). In determining the reasonableness of the settlement, the court in *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000) considered the comparative data about Rule 23 class settlements summarized by the National Economic Research Associates. The NERA Study relied upon by the *Shaw* Court showed that the average result achieved for class members was only ***7% to 11% of claimed damages***. Measured against that standard, the settlement in this case is exemplary. Under the Plaintiffs' theory of the case, the Plaintiffs have successfully prevailed.

Moreover, the attorneys' fees are reasonable in light of the skills and experience Plaintiffs' Counsel has with litigating collective and class actions. Plaintiffs' Counsel consists of attorneys from reputable firms, each with substantial experience litigating wage and hour class and collective actions. Many attorneys would not have understood the nuanced arguments asserted, may not have

been able to discern whether the Plaintiffs even had viable claims, may not have had the expertise to ascertain and evaluate the possible damages awards available to the Plaintiffs. In fact, Plaintiffs' Counsel's one-third fee request has been routinely approved in numerous similar collective and class actions.[4]

Furthermore, the attorneys' fees in this case were entirely contingent upon the success of this litigation, and should not be altered because counsel efficiently resolved this case rather than prolonging the litigation and increasing the potential fees. *See* Manual for Complex Litigation (4th) § 14.121 ("one purpose of the percentage method is to encourage early settlements by not

---

[4] *See, e.g., Ballard v. CoreCivic of Tennessee, LLC*, Case No. Civ. A. 3:20-cv-0418 (M.D. Tenn.); *Jim v. CoreCivic of Tennessee, LLC*, Case No. Civ. A. 1:20-cv-0618 (D. N.M.); *Shumate v. Genesco, Inc., et al.*, Case No. 1:17-cv-03574 (S.D. Ind.); *Klaus v. Humana Pharmacy, Inc*., Case No. 1:19-cv-01025 (S.D. Ohio); *Rosenbohm v. Cellco Partnership*, Case No. 2:17-cv-00731 (S.D. Ohio); *Grayer, et al. v. Kennametal, Inc*., Case No. 1:16-cv-01382 (N.D. Ohio); *Allen v. Sutherland Global Services*, Case No. 6:17-cv-6059 (W.D.N.Y); *Lawrence v. Platinum Home Helper*, Case No. 1:17-cv-1479 (N.D. Ohio); *Fullerton v. Golden Flake Snack Foods, Inc*., Case No. 3:17-cv- 00296 (N.D. Florida); *Miller v. Flowers Baking Co. of Ohio*, Case No. 3:17-cv-725 (N.D.NY.); *Caringi v. Relentless Recovery*, Case No. 1:16-cv-2236 (N.D. Ohio); *Tabor v. A Better Alternative to Senior Care, Inc*., Case No. 1:16-cv-1281 (N.D. Ohio*); Castro v. Heart Home Care, LLC*, Case No. 1:16-cv-571 (N.D. Ohio); *Bainbridge v. Medline Industries*, Case No. 5:16-cv00555 (N.D. Ohio); *Terry v. All Hearts Home Health Care*, Case No. 1:16-cv-515 (N.D. Ohio); *Webber v. Nine Energy*, Case No. 4:15-cv-2406 (S.D. Texas); Swiger, et al. v. Utz Quality Foods, Inc., Case No. 1:15-cv-2196 (M.D. Penn); *Houston, et. al. v. Progressive Casualty Insurance Co*., Case No. 1:15-cv-01853 (N.D. Ohio); *Hillebrandt, et al. v. Horizontal Wireline Services, LLC, et al.,* Case No. 2:15-cv-1307 (W.D. Pa); *Rucker v. Quality Blow Molding*, Case No. 1:15-cv-1039 (N.D. Ohio); Green v. H.A.D., Inc., Case No. 2:15-cv-933 (S.D. Ohio); *Douglas, et al. v. J&K Subway, Inc*., Case No. 4:14-cv-2621 (N.D. Ohio); *McPherson v. Horseshoe Cleveland*, Case No. 1:14-cv-02475 (N.D. Ohio); *Smith v. CMHA*, Case No. 1:14-cv-1409 (N.D. Ohio); *Armbruster v. City of Cleveland*, Case No. 1:13-cv-2626 (N.D. Ohio); *Williams v. Beckett Air, Inc*., Case No. 1:12-cv-2796 (N.D. Ohio); *Welch v. Incept Corporation*, Case No. 5:12-cv-1775 (N.D. Ohio); *Malaj v. Gohlke*, Case No. 1:11-cv-1578 (N.D. Ohio); *Campbell v. Judson Services*, Case No. 1:11-cv-906 (N.D. Ohio); *Murphy v. 1-800-Flowers*, Case No. 1:10-cv-1822 (N.D. Ohio); *Miller v. National Enterprise Systems*, Case No. 1:10-cv-1664 (N.D. Ohio); *Osolin v. Turocy & Watson LLP, et al*, Case No. 1:09-cv-2935 (N.D. Ohio); *Kelly v. National Enterprise Systems*, Case No. 1:09-cv-2268 (N.D. Ohio); *McNelley v. Aldi*, Case No. 1:09-cv-1868 (N.D. Ohio); *Rotuna v. West Customer Management Group*, Case No. 4:09-cv-1608 (N.D. Ohio); *Jackson v. Papa John's*, Case No. 1:08-cv-2791 (N.D. Ohio); *Dillworth v. Case Farms*, Case No. 5:08-cv-1694 (N.D. Ohio); *Fincham v. Nestlé Prepared Foods Company*, Case No. 1:08-cv-73 (N.D. Ohio); *McGhee v. Allied Waste Industries*, Case No. 1:07-cv-1110 (N.D. Ohio).

penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation."). Plaintiff's Counsel undertook representation under a contingent-fee basis, expended significant time and effort and advanced costs and expenses, without any guarantee of compensation. It is a complex FLSA matter, and it has been hard fought by both sides.

Towards that end, the expense and likely duration of continued litigation, and the risk of non-payment, or a significantly reduced payment, strongly supports the attorneys' fees requested in this case. Had this case not settled, the Parties would be required to engage in extensive fact discovery and briefing on Class Certification and summary judgment, which would be expensive and time consuming given the continued factual and legal disputes between the Parties, and at every step of the litigation, Defendants could have succeeded. Plaintiffs' Counsel would have vigorously litigated the case without any promise of success and compensation.

For all these reasons, Plaintiffs' Counsel's attorneys' fees are certainly reasonable and should be approved.

In addition to attorneys' fees, the Settlement provides for attorneys' expense payment to Plaintiffs' Counsel in the amount of $21,184.58. All such expenses were incurred out-of-pocket by Plaintiffs' Counsel during the course of the litigation of this action. Thus, the attorneys' expense payment is also reasonable and should be approved.

**D.** **The Service Payment to the Representative Plaintiff is Proper and Reasonable.**

In wage and hour class and collective actions, "incentive awards are commonly awarded to those who serve the interests of the class." *Lauture v. A.C. Moore Arts & Crafts, Inc*., No. 17-cv-10219, 2017 WL 6460244, *2 (D. Mass. June 8, 2017). "Incentive awards serve to promote class action settlement by encouraging named plaintiffs to participate actively in the litigation in

19

exchange for reimbursement for their pursuits on behalf of the class overall." *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 352 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015). Indeed, "[w]ithout the Named Plaintiffs' efforts, there would be no settlement and the Eligible Settlement Class Members would not be entitled to any relief." *Lauture*, 2017 WL 6460244, at *3. Moreover, incentive payments also serve the important purpose of compensating the named plaintiff for "the risks incurred by becoming and continuing as a litigant, the public nature of a collective action filing, and any other burdens they sustain." *Id.* at *2. "The incentive reward is designed to compensate [them] for bearing these risks." *Id.* at *3 (quoting *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012).

Plaintiff John Thomas provided important and effective services while serving as the only named Representative Plaintiff since the outset of this action. He faithfully engaged in communications with Plaintiffs' counsel, provided extensive factual information to Plaintiffs' Counsel, including information that assisted Plaintiffs' Counsel in formulating the claims in this case and preparing a detailed, factually specific Complaint, agreed to be deposed if necessary, and to testify if there was a trial, and has risked his employment reputation by subjecting himself to the responsibility of serving as the named Plaintiff in a case against his former employer. *See Lauture v. A.C. Moore Arts & Crafts, Inc*., No. 17-cv-10219, 2017 WL 6460244, *2 (D. Mass. June 8, 2017) (awarding incentive payment to named plaintiffs in FLSA collective action noting that they "undertook substantial direct and indirect risk. The Named Plaintiffs agreed to bring this public action in their name, to be deposed if necessary, and to testify if there was a trial. The Named Plaintiffs also assumed significant risk that 'should the suit fail, [they could] find [themselves] liable for the defendant's costs or even, if the suit [was] held to have been frivolous, for the defendant's attorneys' fees.' [] 'The incentive reward is designed to compensate [them] for

bearing these risks.'") (citations omitted); *Mejia v. KVK-Tech, Inc.*, No. 2:19-cv-4841, 2020 WL 5292074, *3 (E.D. Pa. Sept. 4, 2020) (Plaintiffs' argument that putting one's name on a publicly filed employment rights lawsuit comes with substantial risk to current and future employment is well-taken"); *Guippone v. BH S & B Holdings, LLC*, No. 09 CIV. 01029 CM, 2011 WL 5148650, *7 (S.D.N.Y. Oct. 28, 2011) ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person."); *Parker v. Jekyll & Hyde Ent. Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL 532960, *1 (S.D.N.Y. Feb. 9, 2010) ("former employees put in jeopardy their ability to depend on the employer for references in connection with future employment. The enhancement awards provide an incentive to seek enforcement of the law despite these dangers.").

Additionally, the requested service payment ($7,500) is certainly reasonable and well within the range that courts award in class, collective, and representative actions. *See, e.g., Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17-cv-10219, 2017 WL 6460244,t *3 (D. Mass. June 8, 2017); *Ceka v. PBM/CMSI Inc.*, No. 12 Civ. 1711, 2014 WL 6812127, *1 (S.D.N.Y. Dec. 2, 2014); *Hernandez v. Dutton Ranch Corp.*, No. 19-cv-00817, 2021 WL 5053476, *7 (N.D. Cal. Sept. 10, 2021). Accordingly, the service payment is reasonable and should be approved.

## E. The Parties have Agreed on a Fair and Reasonable Administrator to Administer the Settlement.

The Parties have hired a third party to administer the settlement.  The third party class administer will handle receipt of all settlement funds, establish a qualified settlement fund, calculate all necessary tax withholdings and distribute the payments.  As noted earlier, all Plaintiffs will receive a payment from this settlement.  The release of claims for the Opt-in Plaintiffs is a release of wage and hour claims only.  This settlement process is fair and equitable to all Parties and eliminates the need for a separate claim form.

## IV.    THE SETTLEMENT SHOULD BE APPROVED

The terms of the Settlement have been approved by the Parties and their respective counsel. The Settlement was negotiated at arms' length. The Parties entered into the Settlement Agreement voluntarily and knowingly. The Parties agree that the terms of the Settlement Agreement are reasonable, fair, and just, and they settle all claims in this lawsuit. Again, the Settlement Agreement here was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years. Both sides have had considerable experience in prosecuting, defending, and settling federal and state wage and hour claims previously, and, in this case, were particularly well informed as to the facts and circumstances of the litigation. After the Parties reached an agreement on the Settlement, the Parties engaged in extensive negotiations concerning the specific terms of the Settlement and the scope of the release. The settlement documents ultimately approved and executed by the Parties are the result of very comprehensive discussions, as well as exhaustive and hard-fought negotiations. Ultimately, there can be no question that this Settlement Agreement represents fair value for the Plaintiffs.

## V.    CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court enter an Order, substantially as proposed in Exhibit B, approving the Settlement as fair and reasonable. Defendant does not oppose this Motion.

Respectfully submitted,

/s/ *Matthew S. Grimsley*
Matthew S. Grimsley
Ohio Bar No. 0092942
(admitted pro hac vice)
Anthony J. Lazzaro
Ohio Bar No. 0077962
(admitted pro hac vice)
Lori M. Griffin

Ohio Bar No. 0085241
(admitted pro hac vice)
The Lazzaro Law Firm, LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, Ohio 44022
Phone: 216-696-5000
Facsimile: 216-696-7005
matthew@lazzarolawfirm.com
anthony@lazzarolawfirm.com
lori@lazzarolawfirm.com

And

Don J. Foty
(admitted pro hac vice)
Hodges & Foty, LLP
Texas Bar No. 24050022
4409 Montrose Blvd, Ste. 200
Houston, TX 77006
Telephone: (713) 523-0001
Facsimile: (713) 523-1116
dfoty@hftrialfirm.com

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 16, 2023, the foregoing document was filed through the Court's electronic filing system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ *Matthew S. Grimsley*
Matthew S. Grimsley