UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN THOMAS, on Behalf of Himself and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> OS RESTAURANT SERVICES, LLC and OS PRIME, LLC, <br><br> Defendants. | ) <br> ) <br> ) <br> ) Civil Action No. 1:22-cv-10793-PBS <br> ) <br> ) Judge Patti B. Saris <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**SUPPLEMENTAL MOTION FOR APPROVAL OF
FAIR LABOR STANDARDS ACT COLLECTIVE ACTION SETTLEMENT**

Plaintiff John Thomas, on behalf of himself and all Opt-In Plaintiffs (Plaintiff and Opt-In Plaintiffs together referred to as "Plaintiffs"), hereby file this Supplemental Motion for Approval of a Fair Labor Standards Act Collective Action Settlement reached with Defendants, OS Restaurant Services, LLC and OS Prime, LLC ("Defendants").

## I.     INTRODUCTION

Plaintiff and Defendants have reached a settlement of their pending *bona fide* dispute concerning allegations of unpaid wages under the Fair Labor Standards Act, 29 U.S.C § 201 *et seq.* ("FLSA"). The settlement provides fair and appropriate compensation for the claims of the Plaintiff and Opt-In Plaintiffs. Plaintiff now provides additional information to the Court so that it can evaluate the fairness of the Parties' settlement.

1

## II.     BACKGROUND OF LAWSUIT

### A. Plaintiff brought this lawsuit under the FLSA challenging Defendants' alleged failure to comply with the tip credit requirements of the FLSA.

On May 24, 2022, Named Plaintiff John Thomas filed this lawsuit. (Dkt. 1). Plaintiff Thomas worked as a waiter and a bartender at the Fleming's Steakhouse ("Fleming's") in Boston, Massachusetts. (*Id*. at ¶ 13). Fleming's is a high-end steakhouse that employs servers and bartenders to provide service to customers. (*See id.* at ¶ 26). Plaintiff Thomas alleged that Defendants failed to pay its servers and bartenders at Fleming's at the applicable minimum wage rate. (*Id*. at ¶¶ 28, 29). In particular, Plaintiff was paid an hourly rate of $4.35 per hour in 2019 and $4.95 per hour in 2020. (*Id*. at ¶ 30). Plaintiff brought this lawsuit as a collective action under the FLSA and the Massachusetts Minimum Fair Wages Law.

Under the FLSA, all non-exempt employees are required to be paid at an hourly rate that is no less than the minimum wage. *See* 29 U.S.C. § 206. There is no dispute that Defendants paid the servers and bartenders at Fleming's at hourly rates less than the applicable minimum wage rate. Again, Plaintiff Thomas was paid less than $5.00 per hour when the federal minimum wage rate was $7.25 per hour and the Massachusetts minimum wage rate in 2020 was $12.75 per hour.

Defendants paid the servers and bartenders less than the minimum wage rate by relying upon a provision in the FLSA that allows an employer of workers who receive tips from customers to claim a credit based upon the tips employees receive from customers. *See* 29 U.S.C. § 203(m)(2). The effect of this provision is that tips from customers subsidize part of the hourly wage requirement of an employer. *See id*. However, an employer cannot claim this "tip credit for hours that [are not] tip-credit eligible." *Romero v. Top-Tier Colorado LLC*, 849 F.3d 1281, 1285 (10th Cir. 2017); *Rafferty v. Denny's, Inc.*, 13 F. 4th 1166 (11th Cir. 2021). For instance, "[i]n some situations an employee is employed in dual jobs," meaning that the employee has two different

2

jobs. *See* 29 C.F.R. § 531.56(e). In that situation, "no tip credit can be taken for the employee's hours of employment in the occupation" that does not generate tips. *Id*.

To determine whether an employee is employed in a tipped occupation, courts look at the amount of time the employee spends performing tipped work and non-tipped work. For instance, a tipped employee cannot spend more than 20% of his/her time performing non-tipped work. Similarly, a tipped employee cannot perform non-tipped work for a continuous, prolonged period of time, which is defined as any continuous period of time exceeding 30 minutes. These requirements are incorporated into the federal regulations governing the payment of wages to workers. *See* 29 C.F.R. § 531.56(f), effective December 28, 2021. Specifically, 29 C.F.R. 531.56(f) states as follows:

> **(f) *Engaged in a tipped occupation.*** An employee is engaged in a tipped occupation when the employee performs work that is part of the tipped occupation. An employer may only take a tip credit for work performed by a tipped employee that is part of the employee's tipped occupation.
>
> **(1) *Work that is part of the tipped occupation.*** Work that is part of the tipped occupation is:
>
> **(i)** Work that produces tips; and
>
> **(ii)** Work that directly supports the tip-producing work, **if the directly supporting work is not performed for a substantial amount of time**.

29 C.F.R. 531.56(f)(1) (emphasis added).

Work that produces tips includes activities such as "taking orders, making recommendations, and serving food and drink." *Id*. at 531.56(f)(2)(ii). Work that constitutes "directly supporting work" includes activities such as "dining room prep work," "refilling salt and pepper shakers and ketchup bottles," "rolling silverware" and "folding napkins." *Id*. at 531.56(f)(3)(ii). A "substantial amount of time" is defined as "directly supporting work [that] exceeds a 20 percent workweek tolerance" and "any continuous period of time[] the directly

supporting work exceeds 30 minutes." *Id*. at 531.56(f)(4)(i),(ii). Therefore, under the FLSA, an employer can pay less than the minimum wage when a tipped employee performs "tip-producing work," or "directly supporting work" for less than 30 consecutive minutes and for less than 20 percent of the total hours worked in the workweek. *Id*. at 531.56(f)(4).

Although the dual jobs regulation was amended in December 2021, the 20% rule has been enforced by Department of Labor's Wage and Hour Division since at least 1988 when it was first articulated in the Field Operations Handbook as a protocol for enforcing the dual jobs regulation (29 C.F.R. § 531.56) with respect to tipped employees. Since then, the DOL has consistently applied this rule to tipped employees with one brief exception—in 2009, when the DOL issued an opinion letter purporting to change its interpretation, which it promptly withdrew six weeks later. In 2018, the Trump administration reissued the previously withdrawn letter verbatim. Federal courts almost unanimously agreed the letter was not entitled to any deference. *See, e.g., Rafferty v. Denny's, Inc.*, 13 F. 4th 1166 (2021); *Callaway v. DenOne, LLC*, No. Civ. A. 1:18-cv-1981, 2019 WL 1090346 (N.D. Ohio Mar. 8, 2019); *Cope v. Let's Eat Out, Inc.*, 354 F. Supp. 3d 976 (W.D. Mo. 2019). *Spencer v. Macado's, Inc.*, 399 F. Supp. 3d 545, 552-53 (W.D. Va. 2019); *Flores v. HMS Host Corp.*, No. 8:18-cv-03312-PX, 2019 U.S. Dist. LEXIS 183906 (D. Md. Oct. 23, 2019).

This prompted the DOL to issue the new dual jobs regulation that became effective in December 2021. *See* 29 C.F.R. § 531.56(f). However, the 2021 dual jobs regulation made two primary changes. First, the 2021 regulation allows for a credit to be claimed by the employer of up to 20% of non-tipped work and for the first 30 minutes of consecutive, non-tipped work. *See id*. at 531.56(f)(4)(i),(ii). The regulation states as follows:

> (i) The directly supporting work exceeds a 20 percent workweek tolerance, which is calculated by determining 20 percent of the hours in the workweek for which the employer has taken a tip credit. <u>The employer cannot take a tip credit for any time spent on directly supporting work that exceeds the 20</u>

4

    <u>percent tolerance.</u> Time for which an employer does not take a tip credit is excluded in calculating the 20 percent tolerance; or

 (ii) For any continuous period of time, the directly supporting work exceeds 30 minutes. If a tipped employee performs directly supporting work for a continuous period of time that exceeds 30 minutes, the employer cannot take a tip credit for any time that exceeds 30 minutes. <u>Time in excess of the 30 minutes, for which an employer may not take a tip credit</u>, is excluded in calculating the 20 percent tolerance in paragraph (f)(4)(i) of this section.

*Id*. (emphasis added).

  Second, the new regulation specifically states that 30 minutes of continuous, non-tipped work is a threshold that triggers a violation. *See id*.

  In light of this law, Plaintiff Thomas brought this lawsuit. Specifically, Plaintiff alleged that Defendants violated the law by paying its servers and bartenders less than the minimum wage while requiring them to perform "directly supporting work" for more than 20 percent of their total hours in the workweek and for more than 30 consecutive minutes in a shift. Plaintiff alleged that Defendants must compensate him and all other similarly situated servers and bartenders for the difference between the wages actually paid to them and the minimum wage rate for the time when tip credit was not eligible to be claimed by Defendants.

  Defendants deny the allegations raised in this lawsuit and all liability and damages of any kind to anyone with respect to the alleged facts and causes of action asserted in the lawsuit. Defendants contend that that the Named Plaintiff and all other tipped workers were correctly paid in compliance with the law.

 **B. Conditional certification of a collective action under the FLSA has been granted. However, no class action under Rule 23 has been certified. Therefore, the settlement at issue only affects the rights of those workers who affirmatively joined this case by signing a consent form that was filed with the Court.**

  On October 25, 2022, the Court entered an Order granting Plaintiff's Assented to Motion

for Conditional Certification. (Dkt. 24). The Court also approved of a notice and consent form to be issued to the potential collective action members. (*See* Dkt. Nos. 13-1, 24). The consent specifically required each individual to consent to and affirm in writing the following:

- I agree to be represented by Counsel for the named Plaintiff.

- I authorize the named Plaintiff and Plaintiff's Counsel to file and prosecute the above referenced matter in my name, and on my behalf, and designate the named Plaintiff to make decisions on my behalf concerning the litigation, including negotiating a resolution of my claims and entering into a fee agreement with Plaintiff's Counsel, and I understand I will be bound be such decisions.

(*Id*.)

Therefore, each Opt-In Plaintiff in this case signed a consent form that specifically states that he/she wishes to join this lawsuit and he/she designates the Named Plaintiff to make decisions on his/her behalf concerning this litigation, including settlement. (*See id*.) The notice period closed on February 21, 2023 and approximately 326 individuals affirmatively joined this case as Opt-In Plaintiffs. Again, each of these individuals signed and filed a consent form to join this lawsuit. The Opt-In Plaintiffs are listed in Exhibit 1 to the Settlement Agreement.

**C. Plaintiff retained Liesl Fox, Ph.D. to calculate the potential damages.**

During the discovery period, the Parties exchanged significant information. Defendants produced electronic records showing the time when customer transactions were opened and closed by the Plaintiff and Opt-In Plaintiffs. Defendants also produced the time clock records showing when the Plaintiff and Opt-In Plaintiffs clocked in and out during their shifts. Using this information, Plaintiff calculated the potential damages that could be owed.

In particular, Plaintiff retained Dr. Liesl Fox to determine the periods of time spent by the Plaintiff and Opt-In Plaintiffs working for Defendants without active customers while being paid below the minimum wage. Dr. Fox reviewed the transaction open times and the transaction close

times when a Plaintiff worked for Defendants and compared that data to each Plaintiff's clock-in times and clock-out times for the shift. She then identified all non-tipped periods of time that occurred during the shift: between the shift clock-in time and the first check open time, between the last check close time and the shift clock-out time, and intervals of inactivity between a check close time and the next check open time. In other words, she identified each period when there were not active customer transactions for periods of time greater than 30 minutes and she identified the weeks when the total period of time without active customer transactions exceeded 20 percent of the total number of hours worked in a week.

Dr. Fox then calculated the amount of unpaid wages during these periods of time. She subtracted the minimum wage rate from the hourly rate paid by Defendants and then multiplied that number by the amount of time spent without active customers in those instances that exceeded 20% of time worked in a week and those instances when the Plaintiffs spent more than 30 consecutive minutes without active customer transactions. For the period of time after December 28, 2021 (when the new regulation became effective), Dr. Fox applied a credit for the first 20% of time worked in a week without active customers and for the first 30 consecutive minutes of time without active customers in a shift.

Based upon the damage calculation performed by Dr. Fox, the estimated unpaid wages for the Plaintiff and Opt-In Plaintiffs are approximately $127,611.86 on the two-year limitations period. (*See* Ex. "1"). On the three year limitations period (which only applies to willful violations of the FLSA), the unpaid wages are approximately $212,686.44. (*See id.*)

**D. The settlement provides fair and reasonable compensation to the Plaintiffs.**

The proposed settlement only affects the rights of those 326 individuals who affirmatively joined this case. Any individual who did not join this case, can still pursue his/her claims and this settlement has no affect upon them. If approved, Defendants will pay a total sum of $215,000.00. There is no reversion of any unclaimed funds and all 326 Plaintiffs will be entitled to receive a payment.

Plaintiffs' Counsel is seeking $71,666.67 (one-third) of the gross settlement for attorney's fees and $21,184.58 for litigation costs incurred in this matter. Additionally, the settlement agreement allocates $7,500.00 out of the gross settlement amount to be paid to Named Plaintiff Thomas as service payments for his services as the Representative Plaintiff in this case against his former employer and in exchange for a general release. Further, $7,000 of the gross settlement amount will be paid to the Settlement Administrator (ILYM, Group, Inc.), for the cost of settlement administration. After the deductions for attorney's fees, litigation costs, service award, and settlement administration costs, the Plaintiffs are still recovering approximately 84% of the total amount owed for unpaid wages on the two-year limitations period.

### III.   ARGUMENTS AND AUTHORITIES

**A. The terms of the settlement should be approved by the Court.**

The Parties' settlement is fair and reasonable and provides fair compensation to the Plaintiffs. Indeed, the settlement is fair and reasonable because the amount of the settlement is greater than the amount the Plaintiffs may have recovered for back wages on the two year limitations period, without liquidated damages. Under the FLSA, the statute of limitations for bringing a wage claim is two years. The limitations period may be extended to three years if the Plaintiffs prove willfulness – which is a higher standard.

The recovery reached in the Settlement Agreement is also fair and appropriate given that the Parties disagreed over the merits of the case. Plaintiffs argued that there were weeks when they spent more than 20% of their time performing non-tipped work and greater than 30 consecutive minutes in a shift performing non-tipped work. Defendants countered that the Plaintiffs never spent this amount of time performing non-tipped work and there is no evidence to support the Plaintiffs' allegations. Further, Defendants heavily disputed the Plaintiffs' damage calculations and the model created by Dr. Fox.

Further, the Parties disagreed as to whether the Plaintiffs could satisfy their burden to demonstrate that Defendants acted willfully, which in turn affects whether Plaintiffs could recover damages for two (2) years or three (3) years prior to the date on which they joined this lawsuit. *See* 29 U.S.C. § 255. The Parties also disagreed as to whether Defendants could satisfy their burden of proving good faith and, consequently, the extent to which liquidated damages could be awarded in the case.

Due to the directly conflicting factual allegations and differing views on the applicable law, the Parties believe that the amounts reflected in the Settlement Agreement are in the best interest of the Parties. Indeed, the settlement allows the Parties to resolve the claims at issue without the necessity or delay of trial and possible appeals. In determining the reasonableness of the settlement, the court in *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000) considered the comparative data about Rule 23 class settlements summarized by the National Economic Research Associates. The NERA Study relied upon by the *Shaw* Court showed that the average result achieved for class members was only **7% to 11% of claimed damages**. Measured against that standard, the settlement in this case is clearly appropriate for

approval.  Indeed, the Parties are able to resolve this case now rather than after years of protracted and difficult litigation.

Moreover, there is no evidence of any fraud or collusion amongst the Parties in reaching the settlement.  The settlement was the product of arm's length negotiation between Parties with experienced counsel.  In exchange for these payments, the Opt-In Plaintiffs will release Defendants from any and all wage and hour claims they may have and there is not a general release of all possible claims that applies to the Opt-In Plaintiffs.

### B. The Parties have agreed on a fair and reasonable notice plan to administer the settlement.

The Parties have agreed to administer the settlement through ILYM Group Inc. ("ILYM").  ILYM will send the settlement checks to the Plaintiffs along with a copy of the Notice attached to the Settlement Agreement, which explains the key terms of the settlement and the Plaintiffs' release of claims.  All Opt-in Plaintiffs will receive a payment from this settlement.  Again, the release of claims for the Opt-in Plaintiffs is a release of wage and hour claims only.  There is no claim form.  Instead, the release of claims is on the back of the checks and in a notice accompanying the checks.  Therefore, there will be a direct payment available to each Plaintiff.  This settlement process is fair and equitable to all Parties and eliminates the need for a separate claim form.

In *Lazarin v. Pro Unlimited, Inc.*, No. C11-03609 HRL, 2013 WL 3541217 (N.D. Cal. July 11, 2013), the court approved the settlement of an FLSA wage action with a similar process for releasing FLSA claims through check cashing:

> Under the Settlement Agreement, the Named Plaintiffs, the FLSA Class Members who cash their settlement checks, and the California Class Members release all claims against Pro Unlimited and Juniper that were alleged in this case or that reasonably arise out of the facts alleged in the case.

10

*Id.* at *3. Likewise in, *Franco v. Ruiz Food Products, Inc.*, No. 1:10-CV-02354-SKO, 2012 WL 5941801, at *24 (E.D. Cal. Nov. 27, 2012), the court approved a settlement of a hybrid class and collective claim where class members opted in and released FLSA claims by endorsing settlement checks with the following language on the backside: "By endorsing this check, I consent to join the Class in Franco, et. al. v. Ruiz Food Products, Inc., elect to participate in the Settlement, and agree to release all of my claims that are covered by the Settlement." *Id.* The agreement further provided that, "Class Members must only cash one Settlement Award check to opt-in to the Class." *Id.* Lastly, the court made it clear it was approving a settlement agreement that provided, "waivers of claims expressly under the FLSA shall only be binding on Settlement Class members who opted-in as provided above." *Id*. at *25.

Other courts likewise have approved this procedure of opting in and releasing FLSA claims. *See, e.g., Seghroughni v. Advantus Rest., Inc.*, No. 8:12-CV-2000-T-23TBM, 2015 WL 390329, at *1 n.* (M.D. Fla. Jan. 28, 2015); *Ortiz v. Chop't Creative Salad Co. LLC*, No. 13 CIV. 2541 KNF, 2014 WL 1378922, at *2 (S.D.N.Y. Mar. 25, 2014); *Lizondro-Garcia v. Kefi LLC*, No. 12 CIV. 1906 HBP, 2014 WL 4996248, at *2 (S.D.N.Y. Oct. 7, 2014).

Additionally, the settlement notice sufficiently informs the Plaintiffs of the settlement, the material terms, their settlement share, the allocation formula, and the release. *See, e.g.*, *Lapan v. Dick's Sporting Goods, Inc.*, No. 13 Civ. 11390, 2015 WL 8664204, at *3 (D. Mass. Dec. 11, 2015) (approving class notice that, *inter alia*, described settlement terms); *Prena v. BMO Fin. Corp.*, No. 15-CV-09175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) (approving one-step settlement notice when it was "sufficiently in plain English to explain the important points: the terms of the settlement, the allocation formula, the amount of the entitlement, how to opt-in, and

11

that <u>cashing the check is equivalent to releasing the claim</u>"). Based on the foregoing, the Court should approve the Settlement.

### C. The attorneys' fees sought are fair and reasonable.

Additionally, the amount sought by Plaintiffs' counsel for attorneys' fees is fair and reasonable. Plaintiffs' Counsel is seeking $71,666.67, which is 33.33% of the settlement. Plaintiffs' Counsel's lodestar is greater than the fees that are sought. (*See* Ex. "1").

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). Plaintiff's Counsel investigated the claims, analyzed pay data, managed communication with all Opt-in Plaintiffs, and performed other work that resulted in a settlement.

When evaluating a claim for fees, **a party's success in the litigation is the "most critical."** *Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983). Under Plaintiffs' theory of the case, Plaintiffs' Counsel has secured fair and appropriate compensation for its clients. They acquired a collective settlement that provides recovery for each Plaintiff. Under Defendant's theory, the Plaintiffs would be owed nothing.

Moreover, Plaintiffs' Counsel has acquired a collective settlement that provides for a favorable percentage of Plaintiffs' estimated damages given the facts of the case and the relative merits of, and risks related to, Plaintiffs' claims and Defendant's possible defenses. The settlement provides for approximately 169% of the total damages under a two year limitations period.

Furthermore, the legal theories involved required substantial expertise in the wage and hour field. Many attorneys would not have understood the nuanced arguments asserted, nor would they have been able to discern whether the Plaintiffs even had viable claims. Additionally, other

lawyers may not have had the expertise to ascertain and evaluate the possible damage awards available to the Plaintiffs in this case. Thus, the work of Plaintiffs' Counsel provided a significant benefit to the Plaintiffs. Had this case not settled, Plaintiffs' Counsel would have vigorously litigated the case without any promise of success and compensation. At every step of the litigation, Defendants could have succeeded. Therefore, the Plaintiffs were at great risk of non-payment. This risk of non-payment strongly supports the amount requested here.

**D. The settlement should be approved by the Court.**

The terms of the settlement have been approved by Plaintiff, his counsel, Defendants, and Defendants' counsel. The settlement was negotiated at arms' length by experienced counsel. The Parties entered into the Settlement Agreement voluntarily and knowingly. The Parties agree that the terms of the Settlement Agreement are reasonable, fair and just, and they settle all claims in this lawsuit.

In determining whether the settlement is fair and reasonable, the Court should note that "there is a 'strong presumption in favor of finding a settlement fair.'" *Domingue v. Sun Elec. & Instrumentation, Inc.*, 2010 WL 1688793, at *1 (M.D. La. 2010) (*citing Camp v. Progressive Corp.*, 2004 WL 2149079, at *5 (E.D. La. 2004)). Moreover, "that th[e] settlement is the negotiated result of an adversarial proceeding is an indication of its fairness." *Id.*

The settlement here was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years. Both sides have had considerable experience in prosecuting, defending, and settling federal and state wage and hour claims previously, and, in this case, were particularly well informed as to the facts and circumstances of the litigation.

After the Parties reached an agreement on the settlement amount, the Parties engaged in extensive negotiations concerning the specific terms of the settlement and the scope of the release. The settlement documents ultimately approved and executed by the Parties are the result of very comprehensive discussions, as well as exhaustive and hard fought negotiations.

Ultimately, there can be no question that this Settlement Agreement represents fair value for the Plaintiffs. Each of the Plaintiffs will receive payment for their alleged damages under federal law without the risk or expense of continued litigation or trial. Indeed, the amounts recovered under the settlement are fair on both a collective and individual basis.

## IV.   CONCLUSION

The terms of the settlement have been approved by Plaintiff, his counsel, Defendants, and Defendants' counsel. The settlement was negotiated at arms' length by experienced counsel. The Parties entered into the Settlement Agreement voluntarily and knowingly. The Parties agree that the terms of the Settlement Agreement are reasonable, fair and just, and they settle all claims in this lawsuit. For the foregoing reasons, Plaintiffs respectfully request that the Court approve the Parties' settlement.

Date: October 31, 2023

                    Respectfully submitted by:

                    By:/s/ Don J. Foty
                    Don J. Foty
                    (admitted pro hac vice)
                    Hodges & Foty, LLP
                    Texas Bar No. 24050022
                    4409 Montrose Blvd, Ste. 200
                    Houston, TX 77006
                    Telephone: (713) 523-0001
                    Facsimile: (713) 523-1116
                    dfoty@hftrialfirm.com

                    And

By: /s/ *Arnold Lizana, III*
Arnold. J. Lizana, III
BOB No. 646161
Law Office of Arnold J. Lizana III, P.C.
1350 Main Street, Suite 302
Springfield, MA 01103
Telephone: (877) 443-0999
alizana@attorneylizana.com

Matthew S. Grimsley
Ohio Bar No. 0092942
(admitted pro hac vice)
Anthony J. Lazzaro
Ohio Bar No. 0077962
(admitted pro hac vice)
Lori M. Griffin
Ohio Bar No. 0085241
(admitted pro hac vice)
The Lazzaro Law Firm, LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, Ohio 44022
Phone: 216-696-5000
Facsimile: 216-696-7005
matthew@lazzarolawfirm.com
anthony@lazzarolawfirm.com
lori@lazzarolawfirm.com

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2023, this document filed through the Court's electronic filing system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ *Don J. Foty*
Don J. Foty

15